**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KELLY FREDERICKS,** | : | Civil Action No. |
| 764 S 5th Street | : | |
| Philadelphia, PA 19146 | : | |
|     Plaintiff, | : | |
| | : | |
|   v. | : | **Complaint and Jury Demand** |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA** | : | |
| **HEALTH SYSTEM d/b/a UNIVERSITY** | : | |
| **OF PENNSYLVANIA HOSPITAL,** | : | |
| 3400 Civic Center Boulevard | : | |
| Philadelphia, PA 19104 | : | |
|     Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Kelly Fredericks (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against University of Pennsylvania Health System d/b/a University of Pennsylvania Hospital (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant University of Pennsylvania Health System d/b/a University of Pennsylvania Hospital is a health system with a location and corporate headquarters located at 3400 Civic Center Boulevard, Philadelphia, PA 19104.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year relevant to the matter at issue.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the

Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under the ADA and PHRA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2023-08444 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated January 18, 2024.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. In February 2017, Defendant hired Plaintiff in the position of Clinical Nurse for Gastroenterology.

23. Plaintiff was well qualified for her position and performed well.

24. Plaintiff has cervical facet joint syndrome and lumbar radicular pain.

25. The aforementioned medical conditions are considered disabilities under the Americans with Disabilities Act of 1990 ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), as they affect the major life activities, including, but not limited to, standing, sitting, lifting, bending and performing manual tasks.

26. In July 2019, Dr. Christopher Plastaras, Physiatrist, wrote a note for Plaintiff requesting the reasonable accommodation of a standing desk due to her disabilities.

27. Plaintiff gave Dr. Plastaras' note to Nicole McClintlock, Director of Nursing, and Kristi Delp, Division Program Administrator.

28. Defendant provided Plaintiff with the standing desk, however, it did not provide the ergonomics for it.

29. This essentially made the standing desk not set up properly, and was not an accommodation.

30. Plaintiff proceeded to follow up with McClintlock and Delp, but it took months to only be provided with an arm rest for her screen and an extended keyboard.

31. This was not an accommodation.

32. As a result, Plaintiff was forced to place glove boxes underneath her keyboard which exacerbated symptoms of her disabilities.

33. In or around July 2019, Defendant dramatically increased Plaintiff and Sarah Kleba's, Clinical Nurse, workload.

34. Kleba had also previously requested a reasonable accommodation due to her disability.

35. Plaintiff consistently complained about her dramatically increased workload, but Defendant refused to address it for months.

36. In addition, McClintlock blamed Plaintiff's increased workload on her having to attend physical therapy.

37. Plaintiff did not receive the accommodation until December 2019 until she complained to Disability Management.

38. In September 2019, Alex Rella, Work Force Injury Prevention Specialist, ordered Plaintiff a wireless keyboard and mouse due to her disability.

39. However, Defendant did not provide it to Plaintiff until April 2020 and May 2020, respectively.

40. On March 9, 2021, Dr. Plastaras wrote Plaintiff the reasonable accommodation to work from home until September 9, 2021.

41. Plaintiff's job responsibilities did not required her to be in the office, and at the time she was only required to physically report to work once per week.

42. However, on March 24, 2021, Sade Matin, Human Resource Generalist, sent Plaintiff a letter that Defendant was only going to be accommodate her reasonable accommodation request to work from home until April 30, 2021.

43. Prior to this, Defendant had honored Plaintiff's Intermittent FMLA leave since the first year of her employment, without issue.

44. In fact, prior to COVID-19, McClintlock often let Plaintiff work from home as needed.

45. On April 26, 2021, Dr. Plastaras again wrote Plaintiff the reasonable accommodation to work remotely from April 30, 2021 to June 30, 2021.

46. However, Defendant emailed Plaintiff back and forth until June 18, 2021.

47. On June 2, 2021, McClintlock and Matin stated that Plaintiff had to return to work in person.

48. Plaintiff informed McClintlock and Matin of the equipment that she needed as part of her accommodation requests.

49. They instructed Plaintiff to email them a list of the equipment that she needed.

50. On June 14, 2021, Plaintiff emailed McClintlock and Matin that she needed a wireless headset, wireless mouse, wireless keyboard, lumbar support/McKenzie roll and a new chair as a reasonable accommodation due to her disabilities, per her doctor's orders.

51. Matin instructed Plaintiff to contact Defendant's Disability Management department regarding her reasonable accommodation requests.

52. Plaintiff followed Matin's instructions.

53. On June 17, 2021, Plaintiff asked Jillian Coffey, Senior Clinical Manager of Gastroenterology, if the wireless keyboard and mouse were at her work station.

54. However, Coffey informed Plaintiff that they were not.

55. Coffeey stated that Plaintiff was expected to physically report to Respondent either way, and marked her as absent for the day.

56. However, Plaintiff could not have worked that day because Defendant was not granting Plaintiff her reasonable accommodation.

57. On June 23, 2021, Plaintiff complained to McClintlock and Matin about Defendant not providing Plaintiff with her reasonable accommodation to work remotely.

58. However, Matin continued to refuse to provide Plaintiff with her reasonable accommodation and stated that she had to report to work at Defendant's location.

59. On June 30, 2021, Plaintiff complained to Dr. Gary Falk and Dr. Kristle Lynch regarding Defendant's refusal to grant her reasonable accommodation.

60. However, they both reiterated that it was not in their power to make accommodations decisions at Defendant.

61. On July 1, 2021, Dr. Plastaras wrote Plaintiff a note requesting the reasonable accommodation for her to work remotely from July 1, 2021 to September 1, 2021.

62. However, Defendant refused to provide her with this accommodation.

63. As a result, Plaintiff was placed on a medical leave of absence due to her disabilities.

64. Plaintiff was on the medical leave of absence for approximately two (2) months.

65. On July 8, 2021, Coffey issued Plaintiff a written warning for calling out on June 18, 2021 alleging it was a no call no show, which it was not.

66. At this time, Coffey did not inform Plaintiff of the deadline to appeal her warning, which was five (5) days.

67. In or around the summer of 2021, Plaintiff was placed on a medical leave of absence in the form of FMLA leave due to her disability.

68. Plaintiff was on FMLA leave for approximately two (2) months.

69. When Plaintiff returned from her FMLA leave, Dr. Plastaras wrote Plaintiff a note for the accommodation to work remotely.

70. Plaintiff submitted this note to Coffey.

71. However, Coffey refused to provide Plaintiff with this accommodation, and stated that she could only work from home one (1) day per week, allegedly due to business needs.

72. Shortly afterwards, Plaintiff contracted symptoms similar to COVID-19 and was placed on leave for three (3) weeks and was not allowed to work from home.

73. While Plaintiff was out sick, McClintlock called Occupational Health to see if Plaintiff was actually sick.

74. This was not a part of Defendant's policies and procedures.

75. Plaintiff believed McClintlock did this in order to find something to discipline or terminate her over.

76. On November 29, 2021, Coffey issued Plaintiff a second written warning for attendance.

77. However, the time that Plaintiff missed were due to her disabilities and covered by her approved reasonable accommodation.

78. Plaintiff complained about the second written warning to Elyse Iannucci, Director of Operations for the Department of Medicine.

79. Iannucci instructed Plaintiff to appeal both this warning and her prior warning.

80. Plaintiff followed Iannucci's instructions, but Defendant delayed setting up her meeting.

81. Matin then informed Plaintiff that she could not appeal it, allegedly due to the time running out.

82. Upon information and belief, there is no time limit to have a meeting regarding an appeal.

83. In or around December 2021, Dr. Plastaras placed Plaintiff on another medical leave of absence due to her disabilities.

84. Plaintiff was not medically cleared to return to work until the end of April 2022.

85. The day before Plaintiff was set to return to work, Jeff Shapiro, Talent Acquisition Manager, notified Plaintiff that she had been replaced in her position as Clinical Nurse of Gastroenterology previously in February 2022.

86. As a result, Plaintiff was instructed to apply for another position.

87. Plaintiff then became a Referral Nurse for the Contact Center on May 29, 2022 and started on June 6, 2022.

88. This was essentially a demotion as Plaintiff suffered a pay decrease.

89. It is Plaintiff's position that she was discriminated against due to her disability, denied a reasonable accommodation and retaliated against for requesting a reasonable accommodation in violation of the ADA and the PHRA.

90. In addition, Plaintiff contends that she was retaliated against for taking FMLA leave.

91. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

92. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

93. Plaintiff is a "qualified individual with a disability" as that term is defined under the

ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

94. Plaintiff was qualified to perform the job.

95. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

96. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

97. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

98. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

99. The purported reason for Defendant's decision is pretextual.

100. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

101. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

102. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

103. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

104. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

105. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

106. Plaintiff was qualified to perform the job.

107. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

108. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

109. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

110. Plaintiff's disabilities motivated Defendant's decision to constructively discharge Plaintiff.

111. The purported reason for Defendant's decision is pretextual.

112. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

113. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

114. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered

damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT III – RETALIATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

115. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

116. Plaintiff engaged in activity protected by the ADA.

117. Plaintiff requested reasonable accommodations due to her disabilities to Defendant.

118. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, demotion.

119. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT IV – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

120. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

121. Plaintiff engaged in activity protected by the PHRA.

122. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, demotion.

123. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT V – RETALIATION
### THE FAMILY AND MEDICAL LEAVE ACT OF 1993

124. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

125. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

126. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for her own serious medical conditions.

127. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

128. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA.

129. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by demoting her.

130. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

131. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

132. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

133. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

134. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Kelly Fredericks, requests that the Court grant her the following relief against Defendant:

    (a)    Compensatory damages;

    (b)    Punitive damages;

    (c)    Liquidated damages;

    (d)    Emotional pain and suffering;

    (e)    Reasonable attorneys' fees;

    (f)    Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the FMLA and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                          **R**ESPECTFULLY **S**UBMITTED,

                          **KOLLER LAW, LLC**

Date: April 17, 2024      **By:**  ***/s/David M. Koller***
                                     David M. Koller, Esquire
                                     Jordan D. Santo, Esquire
                                     2043 Locust Street, Suite 1B
                                   Philadelphia, PA 19103
                                   215-545-8917
                                   davidk@kollerlawfirm.com
                                   jordans@kollerlawfirm.com

                                   *Counsel for Plaintiff*